UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH LEE BROCKITT,

                Petitioner,                 Case No. 1:14-cv-939

v.                                         Honorable Robert Holmes Bell

CATHLEEN STODDARD,

                Respondent.
_____/

**OPINION**

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner is incarcerated in the Carson City Correctional Facility. He was convicted in the Sanilac County Circuit Court of torture, MICH. COMP. LAWS § 750.85, first-degree child abuse, MICH. COMP. LAWS § 750.136b(2), four counts of second-degree child abuse, MICH. COMP. LAWS § 750.136b(3), and one count of fourth-degree child abuse, MICH. COMP. LAWS § 750.136b(7). The trial court sentenced Petitioner as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent terms of life in prison for the torture and first-degree child abuse convictions, 10 to 15 years for each second-degree child abuse conviction, and 365 days for the fourth-degree child abuse conviction.

The following background facts were provided by the Michigan Court of Appeals:

> The evidence presented at trial established that defendant abused two of his young children, JB and RAB, over the course of several weeks or months. At the time of the abuse, defendant lived in a home with his four children, his wife Natashia,[1] Natashia's cousin Elyse Rich, Rich's boyfriend Jonathan Detiege, and the infant daughter of Rich and Detiege.
>
> Detiege was pulled over in December 2011, and showed the police photographs stored in his cellular phone that depicted the severity of the abuse. On the basis of the photographic evidence and Detiege's statements, the police placed defendant's residence under surveillance. Police eventually obtained a warrant to search the home. Defendant and Natashia were ultimately arrested and charged with various crimes related to the abuse. Confronted with the photographs and other evidence gathered by the police, Natashia pleaded guilty to second-degree child abuse and agreed to testify against defendant at trial.
>
> The photographs provided by Detiege generally depicted a young boy lying naked in a bathtub, his hands bound tightly behind him with electrical tape. In some of the photographs, the boy's head was completely covered with a pair of pants. Still other photographs depicted a young boy standing next to a wall with pants pulled down over his head. In some of the photographs, the boy had noticeable bruising and skin discoloration. The photographs were admitted into evidence at trial. The undisputed testimony revealed that the boy depicted in the photographs was JB, who was three years old at the time. The testimony also established that the pants covering JB's head in the photographs were soaked with urine.

Defendant provided wildly varying explanations for why he had bound JB's hands and covered JB's head with urine-soaked pants. For instance, defendant first suggested that the abuse was a form of punishment designed to correct JB's bedwetting problem. Thereafter, defendant claimed that he had accidentally urinated on JB when JB fell asleep on the toilet. Defendant later claimed that he had placed pants over JB's head in order to prevent JB from picking at his sores.

Rich testified that defendant routinely placed RAB and JB in a bathtub with cold water and forced them to stand for long periods of time. The testimony established that JB was placed in the bathtub as punishment approximately three or four times a week. Sometimes, JB was forced to remain in the bathtub all day. Detiege testified that defendant had also forced the children to stand against the wall all night. At times, according to Detiege, JB was forced to stand against the wall with the urine-soaked pants pulled down over his head. Rich confirmed that she had heard defendant laughing about having urinated on JB. Rich testified that defendant had urinated on both RAB and JB while they were in the shower. Detiege testified that when defendant bound JB's hands with electrical tape, JB's hands would turn purple from the lack of circulation.

RAB and JB were examined by Dr. William Starbird in December 2011. Fortunately, the children showed no signs of permanent physical injury. However, JB did have bruising on his scalp, thigh, elbow, and buttocks. There was also discoloration near JB's left eye, swelling of JB's left ear, and bruises or lesions on JB's buttocks. Dr. Starbird, who had examined the photographs, testified that JB's hands had been bound tightly enough to cut off his circulation. Dr. Starbird opined that the significant redness on JB's head might have been caused by exposure to urine, which contains a compound that breaks down into ammonia. Dr. Starbird believed that the abuse had most likely affected RAB and JB emotionally, but no psychological evidence was admitted at trial.

With respect to JB, the jury convicted defendant of one count of torture, MCL 750.85, one count of first-degree child abuse, MCL 750.136b(2), and four counts of second-degree child abuse, MCL 750.136b(3). With respect to RAB, the jury convicted defendant of one count of fourth-degree child abuse, MCL 750.136b(7).

[1]Natashia was the mother of two of the four children. JB and RAB were defendant's children from a previous relationship.

*People v. Brockitt*, No. 311042, 2013 WL 5379646, at *1-2 (Mich. Ct. App. Sept. 26, 2013).

Petitioner appealed as of right to the Michigan Court Appeals raising two claims of error. First, Petitioner claimed that the evidence was insufficient to support his convictions for

-3-

torture and for first-degree child abuse. Second, Petitioner argued that his trial counsel was ineffective for failing to object when the trial court instructed the jury that a "temporary" loss of the use of a limb can constitute a "[g]reat bodily injury" within the meaning of the torture statute. The Michigan Court of Appeals affirmed Petitioner's torture conviction, but reversed for first-degree child abuse because the prosecutor failed to produce sufficient evidence that Petitioner caused "serious physical harm" to the child. The court of appeals also rejected Petitioner's claim of ineffective assistance of counsel. The case was remanded to the trial court for correction of the Presentence Investigation Report (PSIR) and judgment of sentence to reflect that the first-degree child abuse conviction and corresponding life conviction were vacated. The court of appeals also ordered correction of the PSIR to delete any language suggesting that Petitioner forced JB to eat feces. The Michigan Supreme Court denied Petitioner's application for leave to appeal on April 1, 2014.

Petitioner now raises the following grounds for habeas corpus relief:

I. There was insufficient evidence to convict of torture in violation on [Petitioner's] state and federal constitutional rights to due process.

    A. The proper construction and application of the torture statute is an issue of first impression that merits this court's attention.

    B The torture statute requires the infliction of "great bodily injury or severe mental pain or suffering" and there was not sufficient evidence of that element admitted at [Petitioner's] trial to support his conviction.

    C. The plain language of the torture statute makes it inapplicable to a parent who disciplines his child.

    D. If the court vacate[s] the torture conviction, it must remand for resentencing on [Petitioner's] remaining convictions.

II. State and federal constitutional rights to the effective assistance of counsel were violated and [Petitioner] is entitled to a new trial [where] counsel failed to object to the judge's erroneous and inadequate instruction on the elements of torture.

**Standard of Review**

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent "at the time of the state-court adjudication on the merits." *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011)).

## Discussion

### I. Sufficiency of the Evidence

Michigan's torture statute provides in pertinent that "[a] person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony . . . ." MICH. COMP. LAWS § 750.85(1). A person is within the defendant's "custody or physical control" if the defendant "forcibl[y] restrict[s] . . . [the] person's movements or forcibl[y] confine[s] . . . the person so as to interfere with that person's liberty, without that person's consent or without lawful authority." MICH. COMP. LAWS § 750.85(2)(b).

Defendant first claims that, because he was JB's custodial parent, and therefore had "lawful authority" to forcibly discipline JB, he was legally incapable of violating the torture statute. The Michigan Court of Appeals disagreed, stating:

> We fully acknowledge that parents have a fundamental liberty interest in the care, custody, and control of their minor children. *Troxel v. Granville*, 530 U.S. 57, 65; 120 S Ct 2054; 147 L.Ed.2d 49 (2000); *Santosky v. Kramer*, 455 U.S. 745, 753; 102 S Ct 1388; 71 L.Ed.2d 599 (1982). However, the statutory requirement that the victim be forcibly restricted or forcibly confined "without that person's consent or without lawful authority," MCL 750.85(2)(b), is written in the disjunctive. The disjunctive word "or" is used to indicate a separation between two different alternatives. *People v. Kowalski*, 489 Mich. 488, 499 n 11; 803 NW2d 200 (2011). In other words, the statute allows the conviction (1) of a defendant who has lawful authority to forcibly restrict or confine the victim if the victim does not consent to the restriction or confinement, or (2) of a defendant who does not have lawful authority to forcibly restrict or confine the victim, even if the victim consents to the restriction or confinement.
>
> Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to conclude beyond a reasonable doubt that JB was within defendant's "custody or physical control" under either of these alternatives. Given JB's young age, it can be presumed that he lacked the capacity to consent to the forcible restriction of his movements and the forcible confinement of his person. And although it is true that a parent or guardian may take steps to "reasonably discipline a child, including the use of reasonable force," MCL 750.136b(9), the evidence in this case reveals that defendant used unreasonably excessive force when he bound JB's hands behind his back with electrical tape and forced JB to remain in the bathtub or against the wall for hours with urine-soaked pants covering his head. As this Court has explained, "a criminal statute may not, constitutionally, interfere with the right of parents to administer normal (reasonable and timely) discipline to their children but such statute may prohibit discipline that is not reasonable and timely." *People v. Hicks*, 149 Mich. App 737, 744; 386 NW2d 657 (1986). There was ample evidence presented at trial to allow the jury to conclude that defendant's use of force against JB was neither "normal" nor "reasonable." *Id*.

*Brockitt*, 2013 WL 5379646, at *3.

Petitioner further argued that there was insufficient evidence to prove that he inflicted great bodily injury or severe mental pain and suffering on JB. Again, the Michigan Court of Appeals rejected Petitioner's interpretation of the statute, stating:

> To be convicted of torture, a defendant must "inflict[ ] great bodily injury or severe mental pain or suffering upon another person...." MCL 750.85(1). As noted earlier, there was little, if any, evidence presented at trial concerning JB's psychological state or his mental pain and suffering. Nevertheless, we conclude that there was sufficient evidence to prove that defendant inflicted "great bodily injury" on JB.
>
> For purposes of the torture statute, "[g]reat bodily injury" means, among other things, "[s]erious impairment of a body function as that term is defined in ... MCL 257.58c." MCL 750.85(2)(c)( i ). "Serious impairment of a body function" includes the "loss of use of a limb." MCL 257.58c(a). To constitute a serious impairment of a body function, the loss of use of a limb need not be long-lasting or permanent. *People v. Thomas*, 263 Mich. App 70, 77; 687 NW2d 598 (2004).
>
> The uncontroverted evidence established that JB was frequently unable to use his arms and hands because they were bound behind his back with electrical tape. Several of the photographs admitted into evidence showed JB's arms and hands bound in such a manner. Based on the discoloration of JB's hands in the photographs, Dr. Starbird opined that they must have been bound tightly enough to cut off JB's circulation. Natashia testified that JB was often left with his hands bound behind his back for 12 to 14 hours at a time. During these prolonged periods of forcible restraint, JB was obviously unable to use his hands and arms. The evidence was sufficient to enable the jury to find beyond a reasonable doubt that JB's temporary but recurring loss of the use of his arms and hands constituted a serious impairment of a body function. *See id*.

*Id*. at *3-4. Consequently, the Michigan Court of Appeals concluded that "the prosecution presented sufficient evidence to enable a rational jury to conclude beyond a reasonable doubt that defendant committed torture in violation of MICH. COMP. LAWS § 750.85 by inflicting great bodily injury on JB while forcibly restraining or confining him against his consent and without lawful authority." *Id*. at *4.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of

review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). The the sufficiency standard "must be applied with explicit reference to the substantive elements of the criminal offense *as defined by state law*." *Jackson*, 443 U.S. at 324 n. 16 (emphasis added). The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *See Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002).

Moreover, a federal court on habeas review must distinguish a sufficiency of evidence claim from state law claims which are disguised as *Jackson* claims. *Sanford*, 288 F.3d at 862 (citing *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)). In *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007), the Sixth Circuit provided further guidance in this regard, distinguishing pure sufficiency claims from state-law claims disguised as *Jackson* claims:

> There is a tension inherent in sufficiency of the evidence claims where the underlying conviction is a violation of state law. Generally speaking, federal habeas corpus is not the proper vehicle for state prisoners to seek review of issues of state law. State courts, after all "are the final arbiters of the [state] law's meaning and application" and this Court is not the appropriate forum to adjudicate such issues. *Summers v. Leis*, 368 F.3d 881, 892 (6th Cir. 2004) (alteration added). However, a habeas claim for sufficiency of the evidence does not request a federal court to review the correctness of state law, but instead, to review the evidence to insure that the due process guarantees of the Fourteenth Amendment have not been abridged by a state law conviction. Thus, while the Supreme Court has instructed us to conduct our

habeas review "with explicit reference to the substantive elements of the criminal offense as defined by the state law," our role is not to reanalyze the state court's interpretation of state law. *Jackson*, 443 U.S. at 324, n. 16, 99 S. Ct. 2781. Rather, our review in such cases is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor. Further, relief is only available when the decision results in an objectively unreasonable application of federal law. *Taylor*, 529 U.S. at 409, 120 S. Ct. 1495. In other words, we may only review the state court decision to determine whether there was an unreasonable application of federal law, not simply an incorrect application of federal law. *Id.*

Under the foregoing authority, Petitioner's assertions that the Michigan Court of Appeals improperly interpreted or construed the language of the torture statute with regard to the elements of the offense clearly are state law claims disguised as *Jackson* claims. Consequently, they are not cognizable for purposes of habeas corpus review. Moreover, under the *Jackson* standard, the evidence set forth by the Michigan Court of Appeals was sufficient to sustain Petitioner's conviction. The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Petitioner attacks only the court of appeal's interpretation of the statute, he does not dispute any of the evidence relied upon by the court in finding that he committed torture. Therefore, the decision of the Michigan Court of Appeals was not an unreasonable application of *Jackson*.

## II. Ineffective Assistance of Counsel

Petitioner also contends that his trial counsel rendered ineffective assistance of counsel by failing to object when the circuit court instructed the jury that a "temporary" loss of the use of a limb can constitute a "[g]reat bodily injury" within the meaning of the torture statute. The Michigan Court of Appeals rejected Petitioner's claim, stating:

> As explained previously, the torture statute defines "[g]reat bodily injury" as, among other things, "[s]erious impairment of a body function as that term is defined in ... MCL 257.58c." MCL 750.85(2)(c)( i ). "Serious impairment of a body function" includes the "loss of use of a limb." MCL 257.58c(a). This Court has specifically held that the loss of use of a limb need not be "long-lasting or permanent" in order to constitute a serious impairment of a body function. *Thomas*, 263 Mich. App at 77. Accordingly, the circuit court's instruction to the jury was correct. Defense counsel was not ineffective for failing to make a futile objection. *People v. Unger*, 278 Mich. App 210, 256; 749 NW2d 272 (2008).

*Brockitt*, 2013 WL 5379646, at *6.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed

at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Furthermore, as the Supreme Court recently has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010)). Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

As discussed by the Michigan Court of Appeals, the trial courts instruction to the jury was correct under Michigan law. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004). Consequently, Petitioner's claim is without merit.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A

petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated: October 22, 2014                                    /s/ Robert Holmes Bell
                                                           ROBERT HOLMES BELL
                                                           UNITED STATES DISTRICT JUDGE